UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RONALD D. VORIS, | ) |
| | ) No. CV-05-3049-CI |
| Plaintiff, | ) |
| | ) ORDER GRANTING IN PART |
| v. | ) PLAINTIFF'S MOTION FOR SUMMARY |
| | ) JUDGMENT AND REMANDING FOR |
| JO ANNE B. BARNHART, | ) ADDITIONAL PROCEEDINGS |
| Commissioner of Social | ) PURSUANT TO SENTENCE FOUR OF |
| Security, | ) 42 U.S.C. § 405(g) |
| | ) |
| Defendant. | ) |
| | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 9, 12) submitted for disposition without oral argument on December 27, 2005. Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Joanne E. Dantonio represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 4.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment and remands for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Plaintiff, 46-years-old at the time of the administrative decision, filed applications for Social Security disability and Supplemental Security Income (SSI) benefits on February 19, 2002,

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 1

alleging disability as of August 24, 2000, due to musculoskeletal impairments. (Tr. at 13.) Plaintiff had a high-school education and attended two years of training as a journeyman electrician. Past relevant work included heavy laborer, mechanic, truck driver, and arc welder. Following a denial of benefits at the initial stage and on reconsideration, a hearing was held before Administrative Law Judge John Bauer (ALJ). The ALJ denied benefits; review was denied by the Appeals Council. This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

## ADMINISTRATIVE DECISION

The ALJ concluded Plaintiff met the non-disability requirements, was insured through the date of his decision and had not engaged in substantial gainful activity. Plaintiff had severe degenerative joint disease of the knees, back, and neck, and bilateral epicondylitis in the forearms. (Tr. at 20.) Those impairments, however, were not found to meet the Listings. The ALJ rejected Plaintiff's testimony as not fully credible. The ALJ concluded Plaintiff retained the residual capacity to perform a significant range of light exertion with occasional reaching, handling, and fingering. He was precluded from performing past relevant work, but was found to be able to perform other work such as parking lot attendant/cashier, rental furniture consultant and groover and striper operator. (Tr. at 21.) The ALJ concluded Plaintiff was not disabled.

## ISSUES

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so,

whether that decision was based on proper legal standards. Plaintiff contends the ALJ (1) failed to identify specific jobs available in significant numbers which Plaintiff could perform in light of his impairments, and (2) provided an incomplete hypothetical to the vocational expert.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)  - 3

from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**ANALYSIS**

**1.   Step Five Conclusion**

Plaintiff contends the ALJ improperly concluded in his opinion at step five that Plaintiff could perform other work which exists in significant numbers in the national economy, including parking lot attendant, striper and groover operator, and rental furniture consultant. (Tr. at 19.) Plaintiff asserts the vocational expert testified none of those positions would be available based on the hypothetical supplied by the ALJ. Defendant responds the job of furniture rental consultant as defined by the Dictionary of Occupational Titles (DICOT) was available to Plaintiff in significant numbers as performed in the national economy. Defendant concedes the job of cashier II was not available because, as defined by the DICOT, it required frequent reaching, handling and fingering.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)  - 4

(Ct. Rec. 13 at 17.)  Defendant also noted there was some question as to the number of jobs available as a groover and striper because that job was combined with other wood working jobs which may or may not have accommodated Plaintiff's limitations.  Thus, the only issue is whether there was sufficient evidence to support the ALJ's conclusion Plaintiff could perform other work as a rental furniture consultant.

The position of furniture rental consultant with 15,088 positions in the state, was described by the DICOT as light exertion with only occasional reaching, handling and fingering.  (Tr. at 211.)  Notwithstanding that definition, the vocational expert testified that job, in the local Yakima economy, required a worker to lift and load furniture, taking the position out of the light category.  (Tr. at 212.)  Defendant nonetheless argues the ALJ may reject the testimony of the vocational expert and rely on the job description set forth in the DICOT and as performed in the national economy.  Plaintiff replies case law requires that when non-exertional limitations are a factor, the ALJ may not rely on the DICOT, but may only base his conclusion on the testimony of the vocational expert, citing *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995), *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001), and *Stewart v. Sullivan*, 881 F.2d 740, 747 (9th Cir. 1989).[1]

---

[1]Plaintiff's reliance on *Stewart* is misplaced; the language cited is from a footnote in that opinion and refers to the method in which the Grids should be used when a claimant suffers from non-exertional impairments.  The court concluded reliance on the Grids was inappropriate and that the ALJ was required to secure the

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 5

Plaintiff further asserts the vocational expert did not identify the job of furniture rental consultant; rather, that position was "identified" by the DDS (Tr. at 92) prior to the hearing level.

The ALJ noted in his opinion:

> The Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual of the claimant's age, education, past relevant work experience and residual functional capacity as determined. The vocational expert testified that assuming the hypothetical individual's specific work restrictions, he is capable of making a vocational adjustment to other work.  The vocational expert testified that given all of these factors the claimant could work as cashier II such as parking lot attendant for which there are 61,164 jobs nationally.  She also agreed that the last two jobs identified in the Vocational Decision Worksheet (Exhibit 7E) could be performed by a person with the claimant's limitations.  These jobs are groover and striper operator for which 3,327 jobs exist nationally and rental furniture consultant for which 15,000 jobs exist nationally.

(Tr. at 19.)  As noted previously, the ALJ's conclusions with respect to groover and striper and parking lot attendant are not supported by the vocational expert's testimony.

The relevant testimony by the vocational expert is found at Tr. 211-212:

> Q:  What about the next guy, furniture rental clerk? Is that what –
> A:   Consultant
> Q:   Consultant.
> A:   I'll check that one. 295.357-018, also requirements occasional for reaching, handling and fingering, outlook in Washington, approximately 15,088 positions.
> Q:  You know, whenever I hear the work, "consultant," I always think of a skill. They put that as unskilled.  Is that SVP 2?

---

testimony of a vocational expert.  *Stewart*, 881 F.2d at 744 n.5. Here, there was testimony from a vocational expert; the issue is whether that testimony can be rejected in favor of the DICOT.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)  - 6

```
        A:   SVP 2, don't they?
        Q:   Okay.  What does that person do?
        A:   Up to one month - yeah, that person rents
   furniture and accessories to customers.
        Q:   In other words, I call in and say have you got a
   couch, I need a couch for some company this weekend?
        A:   Um-hum.
        Q:   Yeah, we have a couch.  I need a big one.  And
   they're going to say it's going to cost you 50 bucks or
   something.  Is that what I'm thinking about?
        A:   It is, and according to this labor market, that
   is not a light occupation, at all.
        Q:   The DOT puts it down, light?
        A:   Yeah, the DOT lists it as light.
        Q:   Well, how did you change with it?
        A:   The local labor market requires that individual
   to be able to lift and move furniture, load trucks, unload
   trucks.
```

(Tr. at 211-212.)  Continuing later in the hearing with reference to rental furniture consultant:

```
        Q:   Okay.  So you're looking at the Yakima area?
        A:   Yes.
        Q:   Okay.  And is that also true with your comment as
   to the actually necessary to lift and carry furniture,
   you're going strictly the Yakima area?
        A:   Yes. Yes.
```

(Tr. at 227.)

At step five of the sequential process, the Commissioner bears the burden of establishing other work which exists in significant numbers in the national economy which a claimant may perform based on that claimant's residual capacity.  20 C.F.R. § 404.1520(4)(v); 20 C.F.R. § 1560©).  There are two ways the Commissioner may meet the step five burden: (1) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2 (referenced as the Grids), or (2) by relying on the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999).  When the claimant has significant non-exertional impairments, the ALJ cannot

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF
42 U.S.C. § 405(g)  - 7

rely on the Grids, *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576-77 (9th Cir. 1988), but must obtain the testimony of a vocational expert. Here there were significant non-exertional impairments, including the limitations on reaching, handling, and fingering. Thus, the ALJ properly consulted the vocational expert.

The vocational expert here testified as to job requirements based on the DICOT (as performed in the national economy), as well as how that job was performed in the local economy. Reliance on the DICOT is appropriate for determining the exertional and non-exertional requirements of a specific job. Social Security Ruling 82-61. The ALJ also may consider testimony from a vocational expert as to whether a specific job will accommodate the limitations of a claimant. There may be differences between the DICOT and the vocational expert's testimony based on the knowledge of the expert as to how a specific job is performed in the local economy. Such a difference appears in the captioned matter: the vocational expert stated the job of furniture rental consultant was more than light while the DICOT described it as light.

Under Social Security Ruling 00-4p, when there is an apparent unresolved conflict between the vocational expert's testimony and the DICOT, the ALJ must clarify the discrepancy. Unlike other circuits, the Ninth Circuit in *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) noted that, while the DICOT carries great weight, it is not necessarily controlling and will not trump the testimony of a vocational expert. Contra, *Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995); *Tom v. Heckler*, 779 F.2d 1250, 1255-56 (7th Cir. 1985); *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984);

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 8

*Atkins v. Shalala*, 837 F.Supp. 318, 324 (D. Or. 1993). The ALJ may rely on expert testimony that contradicts a DICOT job description (DICOT 295.357-018) if the record contains persuasive evidence to support the deviation. *Johnson v. Shalala*, 60 F.3d at 1435.[2] However, the ALJ must resolve the conflict. See Social Security Ruling 00-4p (providing that when there is an apparent unresolved conflict between the vocational expert's testimony and the DICOT, the ALJ must clarify and resolve the discrepancy). Here, the ALJ failed to provide reasons for rejecting the vocational expert's opinion that the job of furniture rental consultant was more than light work. Because it is the Commissioner's burden to establish the ability to perform other work at step five, the failure to clarify the discrepancy is error.

Plaintiff's argument, based on language from *Osenbrock*, that the vocational expert "must" identify a specific job meeting the claimant's specific limitations is not persuasive. *Osenbrock*, 240 F.3d at 1162. Here, although the job of furniture rental consultant was not the vocational expert's original thought, but was a suggestion by the ALJ based on an earlier DDS form, the vocational expert discussed the requirements of furniture rental consultant in

---

[2]At least at step four, the opposite is also true. The ALJ may rely on the DICOT as opposed to the testimony of the vocational expert and the national economy as opposed to the local economy. 20 C.F.R. § 404.1566(d)(1); *Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1050-51 (10th Cir. 1993) (claimant must show both that she cannot perform actual past job and that job as generally performed in national economy).

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)  - 9

light of Plaintiff's residual capacity. Plaintiff has not presented persuasive case law that only the vocational expert may suggest the types of other work available at step five; so long as that other work is analyzed by the expert in the context of a claimant's residual capacity, the ALJ would be entitled to consider that testimony along with the relevant sections of the DICOT.

**2.   Hypothetical**

Plaintiff contends the ALJ erred when he provided an incomplete hypothetical to the vocational expert. That hypothetical failed to include Dr. Khamisani's opinion that Plaintiff should avoid prolonged standing, notwithstanding the ALJ's reliance on the other limitations opined by Dr. Khamisani. Plaintiff argues Dr. Khamisani's opinion on limited standing is consistent with the ALJ's finding that Plaintiff suffers from severe degenerative joint disease of the knees and back. Defendant responds the ALJ properly rejected the standing limitation on grounds there was no objective medical evidence to support it.

The ALJ in his opinion noted, "I find that the medical record largely supports Dr. Khamisani's evaluation, although he limited the claimant's ability for prolonged standing and there is no objective evidence to support his limitation. This evaluation is largely echoed in the residual functional capacity assessment completed by the State Agency physicians." (Tr. at 18.)

Dr. Khamisani's report (Tr. at 134) is the single recommendation in the medical file that Plaintiff was unable to do prolonged standing. There are no objective medical findings that would support a limitation on standing. A residual functional

capacity assessment dated November 2001 indicated Plaintiff had the ability to stand and/or walk for six of an eight hour day. (Tr. at 121.) That assessment was reiterated by Dr. Diane Rubin in March 2002. (Tr. at 138.) Imaging completed in June 2003 indicated normal findings with respect to the cervical, thoracic and lumbosacral spine. (Tr. at 155.) An examination by Dr. Wendy Eider in November 2003 did not disclose any reasons to support a standing limitation other than a questionable diagnosis of fibromyalgia. (Tr. at 178.) Finally, Plaintiff testified he quit driving truck because of an incident when his hand fell off the steering wheel while he was driving on a Seattle freeway; he did not pursue other lines of work because of salary requirements. (Tr. at 200, 205.)

Reliance on the opinion of a consulting physician is appropriate when that opinion is supported by and consistent with other evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Thus, the ALJ did not err when he relied on the opinions of the consulting physicians rather than Dr. Khamasani's opinion. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 9)** is **GRANTED IN PART;** the matter is **REMANDED** for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g). The ALJ shall obtain the testimony of a vocational expert and reconsider the step five analysis.

2. Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 12)** is **DENIED.**

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)  - 11

3. Any application for attorney fees shall be made by separate motion.

4. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. The file shall be **CLOSED** and judgment entered for Plaintiff.

DATED January 17, 2006.


                 S/ CYNTHIA IMBROGNO
                 UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)  - 12